IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHALIF JONES,       :<br>    Plaintiff,       :<br>                    :<br>    v.              :<br>                    :<br>LA FITNESS INTERNATIONAL, LLC, :<br>    Defendant.      : | CIVIL ACTION<br>NO. 11-0632 |

MEMORANDUM OPINION

**Pratter, J.**                                                                                               July 22, 2013

This case brings the court to the Court. Plaintiff Khalif Jones alleges that certain aspects of the basketball court at the LA Fitness International, LLC ("LA Fitness") health club located in Huntingdon Valley, Pennsylvania, constitute dangerous and hazardous property conditions which caused Mr. Jones to injure his elbow while playing basketball. LA Fitness now moves for summary judgment and to preclude the testimony of Plaintiff's liability expert, Steve Bernheim, as inadmissible under Federal Rule of Evidence 702 [Docket No. 17]. For the reasons discussed below, the Court will deny both motions.

I.    BACKGROUND[1]

On June 2, 2009, Khalif Jones was playing basketball on an indoor court at the LA Fitness health club located at 2020 County Line Road in Huntingdon Valley. Attempting to block a shot, Mr. Jones jumped beyond the baseline and "suddenly and without warning, fell" into an unpadded section of the back wall of the court, dislocating his elbow. Compl. ¶ 8. As a result, Mr. Jones has suffered severe and permanent injury to the elbow joint, including "right elbow posterior dislocation, lateral epicondylitis, and joint effusion." Compl. ¶ 10.

---

[1] The factual history is undisputed unless otherwise noted. Where there is a factual dispute, as long as Mr. Jones has record support for his position, the facts are viewed in the light most favorable to him.

1

Mr. Jones initiated this action in the Philadelphia Court of Common Pleas on January 31, 2011. LA Fitness timely removed the case to this Court, on the basis of diversity jurisdiction. In his Complaint, Mr. Jones alleges, *inter alia*, that LA Fitness was negligent, careless, or reckless in failing to make the basketball court safe for its designated activity and for failing to warn persons of the dangerous and hazardous condition posed by certain aspects of the court, namely that the padding on its back wall was insufficient. Plaintiff's expert is Mr. Steven Bernheim, a sports and recreation consultant, who has further opined that the basketball court was hazardous because (1) it was "undersized"; (2) there was no baseline or end-line painted across the entire width of the court, but only across the twelve-foot length at the bottom of the "key" beneath the basket; (3) there was insufficient clearance between the baseline and the wall; (4) there was no double line painted at mid-court, as some regulations require of an undersized court; and (5) padding extended only for 16 feet along the back wall below the basket, rather than across the entire wall.

LA Fitness contends that Mr. Bernheim's testimony is inadmissible, because he is unqualified to offer a medical or "biomechanical" opinion as to the cause of Mr. Jones's injury, and because he has failed to show that any single alleged defect of the basketball court rendered it inherently unsafe. LA Fitness also argues that, even assuming that the Court admits Mr. Bernheim's testimony, Mr. Jones has failed to offer evidence of "causation" sufficient to withstand a motion for summary judgment, because he has failed to prove that he would *not* have been injured absent the alleged defects.

## II. DEFENDANT'S MOTION TO PRECLUDE BERNHEIM TESTIMONY

### A. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (2012).

The Supreme Court in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), imposed a "gatekeeping" role upon district courts, "in order to 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" ID Sec. Sys. Canada, Inc. v. Checkpoint Sys., Inc., 198 F. Supp. 2d 598, 601-02 (E.D. Pa. 2002) (quoting Daubert, 509 U.S. at 589 & n.7). "The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." Daubert, 509 U.S. at 590. "Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance." Id. at 591 (quoting Fed. R. Evid. 702). "Daubert's general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).

Rule 702 places "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability and fit." Elcock v. Kmart Corp., 233 F.3d 734, 741 (3d Cir. 2000) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir. 1994) ("Paoli II")).

The party offering the expert testimony must establish that the proffered testimony meets each of the three requirements by a preponderance of the evidence. ID Sec. Sys. Canada, Inc., 198 F. Supp. 2d at 602 (citing Paldillas v. Stork-Gamco, Inc., 186 F.3d 412, 418 (3d Cir. 1999)).

The first requirement, whether the witness is qualified as an expert, has been interpreted liberally to encompass "a broad range of knowledge, skills, and training." Id. (quoting Paoli II, 35 F.3d at 741). "Rule 702 requires the witness to have specialized knowledge regarding the area of testimony. The basis of this specialized knowledge can be practical experience as well as academic training and credentials. [The Court of Appeals for the Third Circuit] ha[s] interpreted the specialized knowledge requirement liberally, and ha[s] stated that this policy of liberal admissibility of expert testimony extends to the substantive as well as the formal qualification of experts. However, at a minimum, a proffered expert witness must possess skill or knowledge greater than the average layman." Elcock, 233 F.3d at 741 (quoting Waldorf v. Shuta, 142 F.3d 601, 625 (3d Cir.1998)) (internal punctuation and quotations omitted).

The second prong requires the expert's testimony to be reliable. The Supreme Court has ". . . conclude[d] that a trial court *may* consider one or more of the more specific factors that Daubert mentioned when doing so will help determine that testimony's reliability. But . . . the test of reliability is 'flexible,' and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides *how* to determine reliability as it enjoys in respect to its ultimate reliability determination." Kumho Tire, 526 U.S. at 141 (citation omitted).[2] "Experts of all

---

[2] The non-exclusive list of factors that Daubert and the Court of Appeals for the Third Circuit have declared important for evaluating whether a particular scientific methodology is reliable include: "(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert

4

kinds tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.' And whether the specific expert testimony focuses upon specialized observations, the specialized translation of those observations into theory, a specialized theory itself, or the application of such a theory in a particular case, the expert's testimony often will rest 'upon an experience confessedly foreign in kind to [the jury's] own.' The trial judge's effort to assure that the specialized testimony is reliable and relevant can help the jury evaluate that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge." Kumho Tire, 526 U.S. at 148-49 (citations omitted).

The final prong requires that the expert testimony "fit" by assisting the trier of fact. ID Sec. Sys. Canada, Inc., 198 F. Supp. 2d at 602-03 (citing Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000)). "Rule [702], in respect to all such matters, 'establishes a standard of evidentiary reliability.' It 'requires a valid . . . connection to the pertinent inquiry as a precondition to admissibility.'" Kumho Tire, 526 U.S. at 149 (quoting Daubert, 509 U.S. at 590, 592). But the "fit" standard does not require a plaintiff to "prove [his] case twice." ID Sec. Sys. Canada, Inc., 198 F. Supp. 2d at 602 (quoting Paoli II, 35 F.3d at 743). Plaintiffs need not "demonstrate to the judge by a preponderance of evidence that the assessments of their experts are *correct*, they only have to demonstrate by a preponderance of evidence that they are reliable." Id. (emphasis added). Thus, the test does not require that the opinion have "the best foundation" or be "demonstrably correct," but only that the "particular opinion is based on valid reasoning and reliable methodology." Id. (quoting Oddi, 234 F.2d at 146).

---

witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put." Elcock, 233 F.3d at 745-46.

**B. Discussion**

LA Fitness first argues that Mr. Bernheim is unqualified to offer an opinion as to the cause of Mr. Jones's injury because he has no medical or "biomechanical" expertise. His background in these areas is immaterial, however, as Mr. Bernheim's opinion is not offered to establish medical causation. Mr. Bernheim's testimony is offered primarily for the purpose of establishing that the basketball court was dangerous because it failed to conform to certain standards within the industry. The Court finds that Mr. Bernheim's background as a consultant and expert in sports risk management and liability renders him qualified to offer an expert opinion as to whether the basketball court in question met certain industry standards, and, if not, in what respects.

Mr. Bernheim testified that, in forming his opinion, he relied on a number of accepted standards and texts, including the basketball rule books of the National Federation of State High School Associations ("NFHS" or "High School Federation"), the National Collegiate Athletic Association ("NCAA"), the National Junior College, the High School Federation Court and Field Diagram Guide, the American Society for Testing and Materials ("ASTM") standards, and the Architectural Graphic Standards ("AGS"). Bernheim Dep. at 47:5-9, 51:2-4, 60:23 (Oct. 24, 2011) (Def.'s Mot. Summ. J., Ex. D); Letter from Steven Bernheim, President, Sports & Recreation Consultants, Inc. to Joseph J. Aversa, Esq., Partner, Aversa & Linn PC (May 12, 2011) (Def.'s Mot. Summ. J., Ex. B); Letter from Steven Bernheim, President, Sports & Recreation Consultants, Inc. to Angela LeBrum, Legal Assistant, Aversa & Linn PC (June 6, 2011) (Def.'s Mot. Summ. J., Ex. C). Mr. Bernheim testified that he was not aware of any regulations specifically applicable to basketball courts found within health clubs. Bernheim Dep. at 65:14-22.

LA Fitness argues that the standards cited by Mr. Bernheim are "not relevant because the[y] do not regulate the basketball court at issue herein." Def.'s Mot. Summ. J. at 9.  While the Court recognizes that the cited standards do not expressly specify that they apply to basketball courts located within health or fitness clubs, the Court does not agree that these standards are irrelevant.  LA Fitness has not identified any competing standard, regulation, or source of information about the design of basketball courts that contradicts those relied on by Mr. Bernheim.  LA Fitness's own expert, Charles Penza, evidently relied on similar texts in formulating his opposing opinion that the LA Fitness court conformed to all available standards and was therefore inherently safe.  Penza Dep. at 18:8-12, 20:7-19 (Oct. 24, 2011) (Pl.'s Opp'n Mot. Summ. J., Ex. 4).  Therefore, the Court finds that Mr. Bernheim's "methodology"—that is, reviewing generally accepted industry and athletic association standards for basketball courts of various types and comparing them to the design of the court in question—is sufficiently "reliable" to come within the dictates of Daubert.

In conducting his review and comparison, however, Mr. Bernheim has drawn an ultimate conclusion (*i.e.*, that the LA Fitness basketball court was "dangerous") that appears to be at odds with facts he describes.

At his deposition, for example, Mr. Berheim agreed that the small size of the court does not, in and of itself, constitute a dangerous or defective condition.  Bernheim Dep. at 59:2-60:18.  Mr. Bernheim also states that the rulebooks and the AGS recommend 10 to 12 feet of clearance around the court between the side- and end-lines and the nearest obstruction, and require no less than 3 feet of clearance.  Bernheim Dep. at 47:18-48:14.  There is some disagreement in the record as to the precise location of the end-line or official out-of-bounds line in relation to the back wall of the LA Fitness court.  On a standard basketball court, the end-line coincides with

both the bottom of the "key" (consisting of the free-throw lane directly beneath the basket), and the bottom of the arch created by the three-point line.  Here, however, where the bottom of the key and the bottom of the three-point-line arch do *not* coincide, Pl.'s Opp'n, Ex. 1, the location of the end-line is unclear.  In his June 6, 2011 expert report letter, based on his review of diagrams and photographs which are not attached to the report, Mr. Bernheim concluded that the end-line or out-of-bounds line is located *at* the back wall, because the painted arch of the three-point throw line continues all the way to the wall itself.  Def.'s Mot. Summ. J., Ex. C.  But at his deposition, in arguing that the line at the bottom of the key should have been extended across the entire width of the court, Mr. Bernheim appears to assume that the bottom of the key marks the end-line, and concedes that the distance between the end-line and the back wall is approximately 3 feet and 7 inches, which is slightly less than 20% wider than the 3-foot minimum required by NFHS and NCAA.  Bernheim Dep. at 61:17-62:4.

At the same time, however, all parties seem to agree that Mr. Jones and other players habitually ignored the demarcations on this particular court, and played the wall itself as the out-of-bounds line.  Fenton Dep. at 45:8-18, 46:14-19 (June 16, 2011) (Pl.'s Opp'n, Ex. 2); Jones Dep. at 51:2-4 (June 16, 2011) (Pl.'s Opp'n, Ex. 3).  Mr. Jones makes much of the fact that the "'local rule' was that the wall was the out of bounds line," Pl.'s Mem. L. Opp'n Mot. Summ. J. at 3, which "left Plaintiff with no margin for error, rather than three to ten feet to decelerate after attempting to block the shot."  Id.  But he does not suggest that he or other players were in any way required by LA Fitness to play the ball off the wall.  Their choice to do so does not, for the purposes of determining liability, relocate the actual end-line and eliminate the buffer zone theoretically provided by LA Fitness via the lines painted on the court floor.

Mr. Bernheim also opines that, as "good risk management," LA Fitness should "have brought the padding from one side to the other" along the full length of the wall behind the basket, Bernheim Dep. at 53:14-22, but admits that "[t]here's nothing in the rule book that requires that . . . ." Bernheim Dep. at 53:19-20, 60:19-61:1 ("This is my personal opinion. There's nothing in ASTM, there's nothing in the federation rule books or anything like.").

Mr. Bernheim is also adamant that the painted end-line should extend across the full width of the court, rather than just the width of the key beneath the basket, as a visual cue to the players that they are nearing the wall. Bernheim Dep. at 61:10-16 ("I think it would have been a safety zone, a warning, how much, I don't know, but it certainly is recommended that that be that way and then at least then hopefully the participants would realize that they're coming close to the end of [the court] and try to adjust their body.").

Finally, Mr. Bernheim has testified that, pursuant to the High School Federation Rule Book, when a basketball court is less than 74 feet long, as this one was, the center should be divided by two parallel lines, each located 40 feet from the opposite end of the court, rather than by a single center line. Bernheim Dep. at 58:13-24. He was not, however, able to explain the significance of that rule, or how a double center line might serve as an additional safety measure, or how it would relate to Mr. Jones's situation. Id.

Nevertheless, "[t]he ultimate touchstone [for admitting expert testimony] is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's technique or principle is sufficiently reliable so that it will aid the jury in reaching accurate results." Paoli II, 35 F.3d at 744 (quoting De Luca v. Merrell Dow Pharm., Inc., 911 F.2d 941, 956 (3d Cir. 1990)) (quotation marks and punctuation omitted). In fact, "[a] judge frequently should find an expert's methodology helpful even when the judge thinks that that expert's

technique has flaws sufficient to render the conclusions inaccurate.  He or she will often still believe that hearing the expert's testimony and assessing its flaws [i]s an important part of [the jury's] assessing what conclusion [i]s correct . . . ."  Id. at 744-45.

While the Court does not find that expert testimony is strictly necessary in this case, where ordinary principles of negligence and the conditions of the premises are well within the jury's comprehension, the Court nonetheless finds that Mr. Bernheim's experience-based testimony regarding various industry standards for basketball courts might assist a jury in determining whether the LA Fitness court conformed to a reasonable standard of care.  Of particular note for the Court's conclusion in this case is the likelihood that a jury may well include jurors who do not share equivalent personal experience on a basketball court, and the proposed testimony from Mr. Bernheim can, to borrow from another athletic environment, serve to level the playing field for the jurors.

The Court agrees with LA Fitness, however, that, to the extent Mr. Bernheim's expert report letters and deposition stretch to address the *cause* of Mr. Jones's injury, his testimony is simply too speculative to be admissible at trial.  Furthermore, neither Mr. Bernheim nor Defendant's expert Mr. Penza may testify at trial as to whether or not the features of the basketball court constitute a "dangerous condition" or whether that court is inherently safe or unsafe.[3]  Therefore, Mr. Bernheim's trial testimony must be limited to his opinion regarding

---

[3] "'Although Federal Rule of Evidence 704 permits an expert witness to give expert testimony that embraces an ultimate issue to be decided by the trier of fact, an expert witness is prohibited from rendering a legal opinion.'"  Flickinger v. Toys 'R' Us–Delaware, Inc., 492 F. App'x 217, 224 (3d Cir. 2012) (quoting Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 217 (3d Cir. 2006)) (internal quotation marks omitted).  "'[E]xclusive control,' 'dangerous condition,' 'substantial cause,' and 'negligence[]'. . . . are legal terms of art that courts commonly hold cannot be the subject of expert testimony."  Id. (citing 4 JACK B. WEINSTEIN & MARGARET A. BERGER, WEINSTEIN'S FEDERAL EVIDENCE, § 704.04[1] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 2011)).

industry standards and rules for basketball courts, and whether the design and condition of the LA Fitness basketball court met those standards.

### III.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. Legal Standard

Upon motion of a party, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2011).  A party moving for summary judgment has the initial burden of supporting its motion by reference to admissible evidence showing the absence of a genuine dispute of a material fact or showing that there is insufficient admissible evidence to support the fact.  Fed. R. Civ. P. 56(c).  Once this burden has been met, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  Berckeley Inv. Grp., 455 F.3d at 201.

Summary judgment should be granted only if the moving party persuades the district court that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party."  Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).  A fact is "material" if it could affect the outcome of the suit, given the applicable substantive law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005).  Further, a court may not

weigh the evidence or make credibility determinations. Boyle v. Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998). Nevertheless, the party opposing summary judgment must support each essential element of his or her opposition with concrete evidence in the record. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

**B. Discussion**

Under Pennsylvania law, a plaintiff's negligence claim must demonstrate: (1) a duty of care or obligation recognized by law, requiring the actor to conform to a certain standard of conduct; (2) the breach of that duty, or failure to conform to the standard required; (3) a reasonably close causal connection between the breach of duty and the resulting injury; and (4) actual loss or damage resulting to the plaintiff from that breach. Farabaugh v. Pa. Tpk. Comm'n., 911 A.2d 1264, 1272-73 (Pa. 2006); Gutteridge v. A.P. Green Servs., Inc., 804 A.2d 643, 654 (Pa. Super. 2002). "The duty of care owed to a business invitee (or business visitor) is the highest duty owed to any entrant upon land. The landowner must protect an invitee not only against known dangers, but also against those which might be discovered with reasonable care." Gutteridge, 804 A.2d at 656 (citing Emge v. Hagosky, 712 A.2d 315, 317 (Pa. Super. Ct. 1998)).

Pennsylvania law sets forth the duty that a possessor of land owes to business invitees as follows: "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the

12

danger." Gutteridge, 804 A.2d at 656 (citing Summers v. Giant Food Stores, Inc., 743 A.2d 498, 506 (Pa. Super. Ct. 1999) (en banc), *appeal denied*, 764 A.2d 1071 (Pa. 2001)); RESTATEMENT (SECOND) OF TORTS § 343 (1965). That being said, a possessor of land is *not* liable to an invitee for injuries caused by a "condition on the land whose danger is known or obvious to [the invitee], unless the possessor should anticipate the harm despite such knowledge or obviousness." Carrender v. Fitterer, 469 A.2d 120, 185 (Pa. 1983) (citing RESTATEMENT (SECOND) OF TORTS § 343A). Cf. Patton v. Worthington Assocs., Inc., 43 A.3d 479, 492 (Pa. Super. Ct. 2012) (discussing comment (f) to Restatement § 343A for the proposition that a possessor may have reason to expect harm to a visitor from a known and obvious danger if the possessor has reason to expect that the invitee's attention will be distracted, that he might fail to discover the obvious, or might fail to protect himself against it); RESTATEMENT (SECOND) OF TORTS § 343A, cmt. (f) ("In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. . . . It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.").

In its initial answer to the complaint, LA Fitness asserted various affirmative defenses, including the doctrine of assumption of risk and/or contributory negligence, and raised issues regarding Mr. Jones's execution of club membership documents releasing LA Fitness from liability for injuries he suffered while using the club facilities. In its motion for summary judgment, however, LA Fitness argues only that Mr. Jones has failed to establish a *prima facie* case for premises liability because he has proffered insufficient evidence that the basketball court was dangerous (*i.e.*, that LA Fitness breached a standard of care) or that his injury was caused by the alleged dangerous conditions. There is no dispute that Mr. Jones was a business invitee on

13

the LA Fitness premises.  Accordingly, the Court addresses only the disputed elements of the cause of action in consideration of the Motion, namely, whether the basketball court was dangerous and whether such condition(s) caused Mr. Jones's injury.

First, the Court holds that Mr. Jones, through the testimony of his expert Mr. Bernheim, has established some dispute of material fact as to whether the overall condition or design of the basketball court posed an unreasonable risk of harm to LA Fitness's basketball-playing members.  LA Fitness correctly points out that Mr. Bernheim's opinion that the basketball court "could have been safer" does not mean that the court was *per se* dangerous.  Nor does the record establish that the basketball court failed to meet a safety standard or regulation cited by either expert.  Such a failure is not necessary, however, to show negligence on the part of a defendant, especially where it appears that written standards or regulations specific to facilities such as public health-club basketball courts do not exist.

While evidence of a defendant's compliance with applicable industry standards may be relevant and admissible for purposes of determining whether a defendant breached a duty of care, see, e.g., Covell v. Bell Sports, Inc., 651 F.3d 357, 365-67 (3d Cir. 2011) (in the context of products liability, holding that compliance with industry regulations is relevant and admissible with regard to negligence concepts like duty of care and foreseeability), the duty of care is an objective standard determined by what an ordinary, careful and prudent person would have done under the same or similar circumstances.  See Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998).  Here, in conjunction with consideration of the size of the basketball court and its other attributes, a jury might reasonably find that the few feet of clearance between the baseline and the wall and/or lack of padding along the full length of the end wall posed an unreasonable risk to the

players, and failed to conform to a reasonable standard of care, regardless of the court's compliance with minimum industry safety recommendations.

LA Fitness has also argued that, because Mr. Jones is unable to prove that he would *not* have been injured if the end wall of the basketball court had been fully padded, Mr. Jones is therefore unable to establish the "causation" element of his negligence action. Establishing a *prima facie* case of negligence, however, does not require Mr. Jones to prove the negative as posed by LA Fitness. Under Pennsylvania law, a plaintiff must introduce "evidence which provides a reasonable basis for the conclusion that it was more likely than not that the negligent conduct of the defendant was a cause in fact of the injury." Fedorcyzk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 74 (3d Cir. 1996) (citing W. PAGE KEETON, ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 41, at 269 (5th ed. 1984)). Exclusivity is not required. At the summary judgment stage, therefore, Mr. Jones must introduce evidence from which a reasonable jury could conclude that there is the requisite causal connection between the condition of the basketball court and his injury.

Mr. Jones has testified that he injured his elbow when his hands collided with an unpadded section of the wall, Jones Dep. at 64:12-65:10, and his injury was witnessed by several other players on the court, including an LA Fitness trainer named Kenny who treated the dislocated elbow immediately after the injury occurred. Jones Dep. at 66:22-67:19. LA Fitness has not suggested or offered any evidence to the contrary. The jury in this case will not, therefore, be "left to speculate" as to how Mr. Jones's injury occurred.[4] It is likewise undisputed

---

[4] In Fedorcyzk, the plaintiff, a cruise-ship passenger, was unable to recall where she was standing when she slipped and fell in a bathtub. A portion of the bathtub had non-skid stripping, and a portion did not. The Court of Appeals for the Third Circuit held that Ms. Fedorcyzk had failed to create a material issue of fact regarding causation because "[n]o evidence presented tends to prove [plaintiff] was standing either on or off the stripping at the time she fell." Fedorcyzk, 82 F.3d at 75-76. And "[w]ithout such evidence, the jury is left to speculate whether Royal Cruise's [admitted failure to adequately strip the bathtub] was the

that the portion of the wall with which Mr. Jones collided was not padded. Finally, Mr. Jones has testified that he played basketball at the Huntingdon Valley location approximately 40 times before the date of the accident, and had collided with the padded portion of the wall previously *without* injuring himself. Jones Dep. at 52:8-53:4. This is not to say that Mr. Jones has proved that lack of padding was the sole or even the primary cause of his injury; however, a jury might reasonably conclude from this evidence that lack of wall padding was a significant factor in Mr. Jones's injury. Whether Mr. Jones would have suffered the same or similar injury regardless of the size, striping, or padding of the LA Fitness court, whether LA Fitness violated any duty of care by failing to extend wall padding across the full width of the court, and whether Mr. Jones is partially or wholly at fault for his own injuries, are questions of material fact to be determined by the jury.[5]

## IV.   CONCLUSION

For the reasons discussed above, Defendant's Motion to Preclude Mr. Bernheim's testimony will be granted in part and denied in part. Defendant's Motion for Summary Judgment will be denied. An appropriate Order accompanies this Memorandum.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

cause in fact of her injury." Id. Similarly, in Butts v. Weisz, the Court of Appeals held that the mere existence of dim lighting conditions and an allegedly dangerous single stair-step did not reasonably suggest that plaintiff's husband's fall was caused by the homeowners' negligence, where no one had witnessed the fall. Butts v. Weisz, 410 F. App'x 470, 472 (3d Cir. 2010). Here, however, it is undisputed that Mr. Jones was injured when he collided with an unpadded portion of the wall.

[5] Once again, the Court notes that LA Fitness has not argued in its Motion for Summary Judgment that Mr. Jones assumed the risk of his injuries by voluntarily playing basketball on an undersized court, that he was contributorily negligent in choosing to play the wall as "out of bounds", or that the unpadded wall was an open and obvious condition for which LA Fitness is not liable, or that Mr. Jones has released the fitness club from a claim for his injuries. See, e.g., Longwell v. Giordano, 57 A.3d 163, 167, 169 (Pa. Super. Ct. 2012).